IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WHITNEY COOK                                                          PLAINTIFF


             v.                          CASE NO.         13-2031


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).


## I.  Procedural Background:

The plaintiff filed an applications for DIB & SSI  on June 16, 2010, alleging an onset date of March 18, 2010, due to plaintiff's lupus, fibromyalgia, passing out (syncope), high blood pressure, asthma, and low back pain (T. 174).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on July 7, 2011.  Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 25 years of age and possessed a high school education.  The Plaintiff  had past relevant work ("PRW") experience as a line worker, crew manager, cashier, and manager.  (T. 176).

On January 6, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's fibromyalgia, lumbago, gastroesophageal reflux disease, asthma, seizure disorder, morbid obesity, hiatal hernia, pain disorder, attention deficit hyperactivity disorder, adjustment disorder, and psychological factors affecting a medical condition did not meet or equal any Appendix 1 listing.  T. 18.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work with additional restrictions.  T. 20.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  assembly worker, inspector and tester, and fishing reel assembler.  T. 27.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, and considerable time reviewing the extensive medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ determined that the Plaintiff had the Residual Functional Capacity to perform

light work except that "the claimant can only occasionally climb, balance, stoop, kneel, crouch and crawl.  She must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases and poor ventilation.  She must avoid all exposure to hazards including no driving as a part of work.  nonexertionally, the claimant is able to tolerate work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and use of little judgment, and the supervision required is simple, direct and concrete." (T. 20)

**1. Credibility:**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)).  Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."  *Perks v. Astrue*  687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

The   ALJ noted the reasons for discounting the Plaintiff's subjective complaints, including the lack of supportive objective medical evidence, citing specifically the numerous normal diagnostic test results; the effectiveness of medication in regard to her pain and seizures;

the minimal treatment for her mental health symptoms consisting only of medications; the medical opinions finding that she was able to perform work activity; the inconsistency of her obesity with her complaints of severe and frequent gastrointestinal symptoms; and the level of her daily activities (Tr. 19-26).

The court also notes that the Plaintiff testified at the hearing before the ALJ on July 7, 2011 that she did not drive and it had been a year "since she had done any driving" (T. 52) but she pleaded guilty to moving violations in Sebastian County District Court in February and March 2011. She had additional violations after the hearing in December 2011 and May 2011. Notwithstanding this fact the ALJ made provision in his RFC to allow for a job that did not require driving.

The This court concludes that, because the ALJ gave several valid reasons for the ALJ's determination that Plaintiff was not entirely credible, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012).

## 2. RFC Determination

 Dr. Bill Payne, a non-examining consultive physician, provided a Physical RFC assessment of the Plaintiff on July 11, 2010 finding the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and that she could stand and/or walk and sit for 6 hours in an 8-hour work day. (T. 254) Dr. Payne also determined that the Plaintiff had no Postural Limitation (T. 255) and no Manipulative Limitations. (T. 256) Dr. Payne's findings were reviewed and affirmed by Dr. Greenwood on August 26, 2010. (T. 263).

### a. Dr. Elangwe

Dr. Elangwe, Plaintiff's treating physician, provided a Medical Source Statement on

April 18, 2011 finding that the Plaintiff suffered from loss of consciousness, seizures, and jerky movement of the extremities and that she could never be exposed to unprotected heights, moving machinery, marked temperature changes, driving automotive equipment, dust, fumes and gases or exposed to noise.  He felt she would need to take unscheduled breaks, her pain would interfere with her concentration, and could not tolerate work stress. (T. 1236).  He felt that she was "unable to work d/t symptoms." (T. 1237).

The ALJ discounted the opinion evidence of Dr. Elangwe (T. 24) and the Plaintiff contends this was error. (ECF No. 14, pp. 13-14). Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight. *See Stormo*, 377 F.3d at 806 ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal marks omitted)); 20 C.F.R. § 404.1527(e)(1). Further, although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner. See 20 C.F.R. § 404.1527(e)(2). Thus, to the extent that the ALJ discredited [the treating physician's] conclusion that [plaintiff] could not work, he rightly did so.

In this case when the Plaintiff filed her claim for disability on June 10, 2010 she stated that she was on Lexapro, prednisone, relpax, and singulair. (T. 177).  None of these are anti

seizure medications. When the Plaintiff went to the Mercy ER in June 2006 she denied a history of seizures (T. 1214). While she had complained of seizures in the past her MRI in February 2006 (T. 1234) and February 2010 (T. 1113) were normal. A CT in August 2010 (1111) and November 20, 2010 (T. 1292) and November 28, 2010 (T. 1032) were normal. Dr. Elangwe ordered and EEG which was performed on April 15, 2011 which was normal (T. 1255) and another was performed in August 2011 which was normal (T. 1392). In September 2009, her treating physician at the time, Dr. Miller, noted that the Plaintiff had failed refill her Topamax prescription. (T. 236). Dr. Elangwe notes that in June 2011 the Plaintiff had significant seizure improvement on Topamax[2] and was seizure free on Dilantin[3]. (T. 1315). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

In October 2007 she was admitted to Mercy ER for difficulty in breathing (T. 1162) and denied smoking. She denied smoking again in December 2007 (T. 1160), and June 2009 (T. 1131), however, subsequent medical records show a long history of smoking. (T. 1152, 1146, 1122, 1116, 1104). On January 7, 2011 the Mercy ER records show that Plaintiff claimed she

_____

[2]Topamax (topiramate) is a seizure medication, also called an anticonvulsant. Topamax is used alone or in combination with other medications to treat seizures in adults and children who are at least 2 years old.

[3]Dilantin (phenytoin) is an anti-epileptic drug, also called an anticonvulsant. It works by slowing down impulses in the brain that cause seizures.

had smoked 1 pack per day for five years.  *See Kisling v. Chater,* 105 F.3d 1255, 1257 (8th

Cir.1997) (impairments that are controllable or amenable to treatment, including certain

respiratory problems, do not support a finding of disability, and failure to follow a prescribed

course of remedial treatment, including the cessation of smoking, without good reason is grounds

for denying an application for benefits).

It is the ALJ's function to resolve conflicts among 'the various treating and examining

physicians.' " *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir.1995). The ALJ may reject the

conclusions of any medical expert, whether hired by the claimant or the government, if they are

inconsistent with the record as a whole. *Id*.  *Johnson v. Apfel*  240 F.3d 1145, 1148 (C.A.8

(Neb.),2001).

### b.  Dr. Miller

The Plaintiff argues that the ALJ did not properly consider the opinion of Dr. Miller who

recommended that have "training for job that does not require standing." (ECF No. 14, p. 14).  At

the time Dr. Miller voiced this opinion, August 26, 2009,  he also noted that the Plaintiff should

loose weight and exercise.  He also noted that the Plaintiff had indicated to him a desire to file

for disability and that he did "not identify a chronic disabling condition."  (T. 237).  Dr. Miller

noted in September 2009 that the Plaintiff was not taking her medication (T. 236) and he saw her

again in February 2010 when he ordered an MRI which was normal. (T. 1113).  After that the

Plaintiff appears to have discontinued her treatment by Dr. Miller, stopped work (T. 174) and

filed for DIB (T. 131) and SSI. (T. 138).  Dr. Miller's opinion does not represent that the Plaintiff

would be unable to work at a substantial gainful level. *Depover v. Barnhart*  349 F.3d 563, 566

-567 (C.A.8 (Iowa),2003).

Specifically, the court will  uphold the ALJ's decision to credit a one-time consultant and discount a treating physician's opinion "(1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (internal citations and quotations omitted). *Anderson v. Barnhart*  344 F.3d 809, 812 -813 (C.A.8 (Iowa),2003)

### c.  Dr.  Kathleen Kralik

Plaintiff alleges that the ALJ erred in rejecting Dr. Kralik's opinion, in particular the Global Assessment Functioning (GAF) score that Dr. Kralik assessed. (ECF No. 14 at pp. 15-16).

Dr. Kralik performed a consultative mental evaluation of Plaintiff at the request of the agency on March 1, 2011 (Tr. 25-26, 1001-1009).  She found the Plaintiff to be Mildly to Moderately Impaired (T. 1007-1008).  The ALJ noted that Dr. Kralik opined that Plaintiff had an adequate capacity to interact socially, and was only moderately impaired, at the most, in her capacity to communicate, in coping with the typical mental and cognitive demands of work, attending and sustaining concentration, sustaining persistence in completing tasks, and completing tasks in a timely fashion (Tr. 25, 1007-1008). The ALJ noted that he discredited Dr. Kralik's assessment to some degree because it appeared that she relied heavily on Plaintiff's subjective report of symptoms and limitations (Tr. 25-26). The ALJ also noted that Dr. Kralik attributed Plaintiff's limitations to difficulty staying focused and distractibility, but the ALJ found it notable that Dr. Kralik reported that Plaintiff's cell phone was frequently ringing during the evaluation, an obvious distraction itself (Tr. 25, 1004-1005). Dr. Kralik believed that Plaintiff's frequent emergency room trips would interfere with her ability to sustain persistence and complete work in a timely fashion, but the ALJ found it notable that Plaintiff admitted that

she often waited until the last minute to take even an over-the-counter pain medication to the point that she felt she must go to the doctor (Tr. 25, 1007). The ALJ's residual functional capacity assessment as to Plaintiff's mental limitations is consistent with the overall moderate limitations assessed by Dr. Kralik.

When the Plaintiff filed her claims for disability she did not list any mental impairment. (T. 174). The fact that the plaintiff did not allege the impairment as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment  was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). In all of the Plaintiff numerous ER visits the Neurological Examination indicate that she is alert and oriented times three with no focal neuro deficits.

The Plaintiff  did not seek treatment from any mental health professionals and was never hospitalized for mental health issues (Tr. 25). *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (the fact that the claimant had not sought or been referred for professional mental health treatment was contrary to her claims of disabling depression). Significantly,  just prior to Dr. Kralik's evaluation, a progress record from Dr. Elangwe from February 2011 specifically reported her depression to be stable and well controlled on the medication Lexapro (Tr. 1319). Conditions that are controllable with treatment are not disabling. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

Plaintiff argues that the ALJ erred in discrediting Dr. Kralik's very low GAF score assessment of 40 to 50 (Tr. 26, 1007).(ECF No. 14  pp. 15-16). However, the ALJ was not required to assign significant weight to a single GAF score of 40-50 assessed by this one-time examiner. While the Eighth Circuit Court of Appeals has recognized that GAF scores are

relevant evidence in evaluating a disability claim (*See Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009); *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003)) a GAF (global assessment of functioning) score is not determinative for Social Security purposes. The Social Security Administration has explained that, "[t]he GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-765 (Aug. 21, 2000), *cited in Jones v. Astrue*, No. 09-3263, — F.3d —, 2010 WL 3396835, * 13 n.4 (8th Cir. Aug. 31, 2010) (Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings); *see also Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score not essential to the RFC's accuracy).

"[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010). This is not a case in which there is a long time documented history of low GAF scores. Thus, the single GAF score by this one-time examiner is not determinative here, and Plaintiff's reliance on the GAF score is misplaced.

The court finds that  the ALJ properly discounted the opinions of a consulting physician and several treating physicians as to Plaintiff's residual functional capacity (RFC),  *see Renstrom v. Astrue*, 680 F.3d 1057 at 1064 (treating physician's opinion does not automatically control); *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (generally when consulting physician examines claimant only once, his opinion is not considered substantial evidence).

The Plaintiff failed to meet her burden of demonstrating her RFC, *see Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012) and the ALJ's hypothetical to the vocational expert (VE) accounted for all of Plaintiff's proven impairments, *see Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of claimant's proven impairments; hypothetical must include impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this January 27, 2014.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE